

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-26-00001-CV

IN THE ESTATE OF MAX HARLAN COVINGTON, DECEASED

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. PR-2025-13392

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

In this will contest, Robert Nathan Covington, Appellant, and Gina Covington Jones, Appellee, each separately applied to probate what they contended to be the last will and testament of Max Harlan Covington. Robert sought probate of a 2017 Will. Gina sought probate of a 2020 Will. The trial court entered an order probating the 2020 Will.

Robert appeals. In plain language, Robert contends that: (1) Gina sought to probate a copy of the 2020 Will, and that Gina therefore had to explain why she did not produce the original; (2) Gina's evidence regarding the explanation was insufficient to support the trial court's decision to accept Gina's explanation; and thus, (3) this Court should reverse the trial court's decision. Robert also contends that Gina had to prove that the 2020 Will had not been revoked, and that her evidence on this point was likewise insufficient for the trial court to rule in Gina's favor.

We find for Robert on his first issue. We therefore need not and do not reach his second point. We reverse and remand the case to the trial court for further proceedings.

## I.     Background

Max died on November 16, 2024. On February 10, 2025, Gina, Max's daughter, applied to probate Max's 2020 Will. The will advanced by Gina was executed in 2020 and left the entirety of Max's estate to Gina. Gina attached to her application to probate a copy of the 2020 Will, which was self-proved, but she claimed the original 2020 Will could not "by any reasonable diligence be produced."

On February 24, 2025, Robert, Max's grandson, filed an opposition to Gina's application to probate the 2020 Will. Robert claimed, with respect to the 2020 Will, that Max lacked testamentary capacity at the time it was executed and that it was executed as a result of undue influence by Gina. That same day, Robert applied for probate of the 2017 Will, which left the entirety of Max's estate to Robert and Robert's wife in equal shares.

The trial court conducted a hearing on the applications. After the hearing, the trial court issued an order probating the 2020 Will. Among other things, the trial court found that "[t]he original of the Will was not produced, and the cause of its nonproduction has been sufficiently proved to satisfy the Court that the Will cannot by any reasonable diligence be produced." The trial court also found that "[s]uch Will has not been revoked by [Max.]"

From the order probating the 2020 Will, Robert appeals. Gina filed no appellee's brief.

## II.    Relevant Legal Requirements

"All applications to probate a will must meet certain requirements, which include establishing that an original will was not subsequently revoked." *Est. of Brown*, 704 S.W.3d 428, 434 (Tex. 2024) (per curiam) (citing TEX. EST. CODE ANN. § 256.152(a)(1)). "Two additional requirements apply when an original will is not produced in court." *Id.* "First, the applicant must prove the cause of nonproduction." *Id.* (citing TEX. EST. CODE ANN. § 256.156(b)(1)). "Second, if the will was last seen in the testator's possession or in a place to which [he] had ready access, the applicant must overcome a rebuttable presumption that the testator revoked the will." *Id.* (citing *In re Est. of Glover*, 744 S.W.2d 939, 940 (Tex. 1988) (per curiam) (orig. proceeding)).

3

These two requirements are independent of each other. In other words, if the applicant does not meet the first requirement, the application fails. *See id.* at 436. In the *Estate of Brown*, the Texas Supreme Court held that the applicant in that case had "carried its burden" to explain nonproduction of the original will, and for that reason, the court of appeals "should have proceeded" to address the question of whether the will had been revoked. *Id.* Our Court has held that these requirements are independent of each other going the other way, meaning that a finding regarding revocation can make it unnecessary to address nonproduction of the original will. *In re Est. of Wilson*, 252 S.W.3d 708, 714 (Tex. App.—Texarkana 2008, no pet.) ("Because we have found the evidence rebutting the presumption of revocation was legally insufficient, it is not necessary for this Court to decide [the] remaining issue.").

Returning, then, to the subject of nonproduction of an original will, "[t]o prove the cause of nonproduction of the will, an applicant must present evidence 'sufficient to satisfy the court that the will cannot by any reasonable diligence be produced.'" *Est. of Brown*, 704 S.W.3d at 434 (quoting TEX. EST. CODE ANN. § 256.156(b)(1)). "Although applicants are not required to prove exactly *how* the original will was lost, they must demonstrate the will could not be found after a reasonably diligent search." *Id.* "There is no single correct method to conduct a reasonably diligent search for a will; courts have held that searches broad enough to include safe-deposit boxes and other places where the will would likely be found are sufficient." *Id.*

## III. Standard of Review

We review a trial court's ruling on a probate application for an abuse of discretion. *In re Est. of Boren*, 268 S.W.3d 841, 846 (Tex. App.—Texarkana 2008, pet. denied). "A trial court

4

abuses its discretion 'if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.'" *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (per curiam) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)); *In re Est. of Boren*, 268 S.W.3d at 846 (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). A trial court also abuses its discretion when it clearly fails to correctly analyze or apply the law "because 'a trial court has no "discretion" in determining what the law is.'" *State v. Three Thousand, Seven Hundred Seventy-Four Dollars and Twenty-Eight Cents U.S. Currency ($3,774.28)*, 713 S.W.3d 381, 387 (Tex. 2025) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). However, "[w]hen reviewing matters committed to the trial court's discretion, 'the reviewing court may not substitute its judgment for that of the trial court.'" *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam) (quoting *Walker*, 827 S.W.2d at 839).

Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not "independent grounds for asserting error, but they are relevant factors in determining whether the trial court abused its discretion." *In re Marriage of Williams*, 646 S.W.3d 542, 545 (Tex. 2022) (per curiam); *In re Est. of Boren*, 268 S.W.3d at 846.

Regarding legal sufficiency, "[e]vidence is legally sufficient if there is 'more than a mere scintilla' to support a vital fact-finding, i.e., 'the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Mehta v. Mehta*, 716 S.W.3d 126, 131 (Tex. 2025) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)). "Reviewing courts must consider evidence in the light most favorable to the judgment and its findings,

5

'indulg[ing] every reasonable inference that would support it.'" *Id.* (alteration in original) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). When an appellant challenges a trial court's "adverse finding on which [he] did not have the burden of proof, the appellant must demonstrate on appeal that no evidence supports the adverse finding." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 669 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.—Texarkana 2011, no pet.) (citing *Croucher v. Croucher*, 660 S.W.3d 55, 58 (Tex. 1983))).

> We will sustain such a challenge only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact.

*Id.* (quoting *Monasco*, 339 S.W.3d at 830); *In re Est. of Boren*, 268 S.W.3d at 848. "If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists." *Great N. Energy*, 528 S.W.3d at 669 (quoting *Monasco*, 339 S.W.3d at 830).

Regarding factual sufficiency, "[w]hen challenging the factual sufficiency of the evidence supporting an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding." *Id.* at 670 (quoting *Monasco*, 339 S.W.3d at 830); *Est. of Johnson*, No. 02-20-00133-CV, 2021 WL 3796019, at *5 (Tex. App.—Fort Worth Aug. 26, 2021, no pet.) (mem. op.). "The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from

6

the evidence." *Great N. Energy*, 528 S.W.3d at 670 (quoting *Monasco*, 339 S.W.3d at 830–31). "A challenge to the factual sufficiency of the evidence will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* (quoting *Monasco*, 339 S.W.3d at 831).

We are mindful that "[t]he trial court, as fact-finder, was the sole determiner of the credibility of the witnesses, and we are not to invade the fact-finder's domain." *Est. of Ozee*, No. 06-12-00070-CV, 2012 WL 5897602, at *2 (Tex. App.—Texarkana 2012, no pet.) (mem. op.) (citing *City of Keller*, 168 S.W.3d at 822).

## IV.     Focused Factual Discussion Regarding Robert's First Point

With the above requirements and the standard of review in mind, we turn to the evidence specifically concerning Gina's explanation for not producing the original 2020 Will, and the trial court's ruling on that question. We do so mindful of the fact that the trial court was asked to decide a welter of issues, whereas, on appeal, the issues have been narrowed.

At trial, Gina testified that the copy of the 2020 Will she filed in the trial court came from the drafting attorney. Gina agreed that it was possible that the original "2020 Will was misplaced when [Max] and his belongings were moved" to a State veterans nursing home. On cross-examination, Gina said her aunt, Sue Blevins, moved Max into the nursing home and Gina assumed Sue stole the will from Max. Gina stated that she had possession of the 2020 Will at one time, when it was located in Max's underwear drawer in his house.[1] But Gina testified that

---

[1]Gina was living on Max's property at the time.

7

because Sue stole the 2020 Will from Max,[2] Gina could not produce the original. When questioned why she had previously stated that the 2020 Will was lost during the move to the nursing home, Gina stated, "It's lost. I don't know where it's at." When she was again questioned why she was vacillating between the 2020 Will being either stolen or lost, Gina said, "I don't know what happened to the [2020] Will."

Gina gave no testimony whatsoever regarding any search for the 2020 Will following Max's death.

When announcing its ruling from the bench, the trial court acknowledged that will contests are often emotionally charged but reminded the parties that "[t]his is about a legal question that is required to be [decided] by the Court." The trial court ruled, "[B]ecause I have not heard sufficient testimony to set aside the application to probate the 2020 Will, it will be probated, and Gina Covington Jones will be appointed as independent executrix of [Max's] estate, as per the terms of the [2020] Will."

## V.     Analysis Regarding Robert's First Issue

Gina was required to "demonstrate the will could not be found after a reasonably diligent search." *Est. of Brown*, 704 S.W.3d at 434. Gina offered conflicting testimony about what might have happened to the original 2020 Will. The theories were that the 2020 Will had been misplaced or stolen. But Gina did not testify, at all, about what she did to look for it.

We therefore sustain Robert's first issue.

---

[2]Robert called Sue to testify. She testified about other matters. Gina did not question Sue.

8

## VI.    Robert's Second Issue

As stated above, an applicant seeking to probate a copy of a will must meet two independent requirements:  (1) explain the nonproduction of the original, and (2) overcome the presumption of revocation.  *Id.* at 434, 436; *Est. of Wilson*, 252 S.W.3d at 713–14.  As discussed above, the evidence regarding the nonproduction of the original of the 2020 Will was insufficient for the trial court to find that requirement had been met.

We therefore do not reach Robert's second issue.

## VII.    Conclusion

We reverse the trial court's order probating the 2020 Will and remand this matter to the trial court for further proceedings in accordance with this opinion.


Jeff Rambin
Justice


Date Submitted:    June 19, 2026
Date Decided:    August 7, 2026